Good morning, Your Honor. I did say bye. I got the wrong case. No, that's the wrong case. I got the wrong case. I get Mengistu. I'm sorry. Yes, sir. How about that? May it please the Court, I'm David Yalume, co-counsel for the appellant, Neway Mengistu. Neway Mengistu seeks the order of this Court reversing the lower court decision granted in motion of summit judgment that was filed by the Housing Authority of the City of Los Angeles, the respondent. Because that order granted in motion for summit judgment was erroneous both in law and in fact. Your Honor, we are relying fully on the appellant and reply brief filed by Mr. Mengistu. May it please the Court, we want to reiterate, as we have stated in the brief, that Mr. Mengistu, who is a disabled tenant and applicant, was entitled to benefits that is sought from the public housing agency called Housing Authority of the City of Los Angeles, which I will call HACLA for short, H-A-C-L-A. Mr. Mengistu, after he was approved for the Section 8 program. Counsel, can I, because we need to get to the number, but let me just tell you what my concern is here. Your client got first, he clearly was part of Section 8, he got a one bedroom. Then he got a two bedroom. Now he seeks a third bedroom and the reason he says he needs it is because he has exercise equipment that has been medically required. Under the regulations, he has to show that the third bedroom is reasonable and necessary. He had two doctors who said he needed that. But when HACLA called them, they said, oh no, we really didn't say it was necessary. He asked us to say that. We think it might help him exercise more, but it's not a requirement. Where's the controversy there? If he doesn't medically need it, why is he entitled under the regulation to a third bedroom? Very important point, Your Honor. As we have clarified in the brief, the lower court, the federal court relied on that misleading and false representation from the feds and their counsel in coming to this decision. What happened, as a matter of fact, is that as stated in Mr. Cannella, who is the housing manager of HACLA, in his declaration, which is at Volume 1, Supplemental Extract Record, pages 75 to 78, he misrepresented his conversation with one of Mr. Magistu's doctors, that is Dr. Kazuboski. Let me ask you this. I thought it was both of the doctors said that, but let's say that you are correct, that he misrepresented it. As whoever the lawyer was in the case, then you would put in the declaration of the doctor saying, no, he misunderstood what I said because I did intend to say that he needed this. But that didn't happen. All the district court had was the representation that it wasn't necessary. So there's no material issue of fact on that point, is there?  When the record shows ERO 40, page 40 and 41, that is the extract of record, page 40 to 41, we included the deposition testimony of Dr. K, that is Dr. Kazuboski, the only doctor Mr. Konella contacted, in which he clearly reiterated and restated that he was the one who authored that Exhibit 56 to 57, which is a two-page letter dated February 6, 2015, that he sent to Hartler in support of Mr. Magistu's request for reasonable accommodation. At no time during the deposition did he recount that he never authored that statement. No, I don't mean in terms of authoring it, but rather that it wasn't a requirement. He didn't say he needed it. He said it might help him exercise more. Your Honor, his February 6th letter, the February 6th letter of Dr. Kazuboski and the February 5th letter of 2015 of Dr. Kurevich expertly stated that those equipment were medically necessary. We may be disputing, fussing around about what necessary means, but as I understand it, your client is disabled, is that correct? Correct. With severe disability conditions. Yes. And he's in a wheelchair. Yes, Your Honor. And he has the second bedroom because he needs a caregiver. Correct. That's approved by the State. And the written statements of his doctors are that he will improve if he has this exercise equipment because he needs to exercise from time to time during the day. Yes. And your Honor, as the record shows, he's a very huge man, and he has this severe, with due respect, I'm not a doctor, it's called deconditioning where his muscles are losing. Atrophying. Yes, so he needed this special equipment that will be helping him to regain his muscles. And he has other uncontrollable diabetes, uncontrollable high blood pressure, and all the conditions. And that is why those equipment, the exercise equipment, that he needs to have them at home. Is there any evidence in the record that there's an alternative to that, to that equipment that will give him the same benefit? No, Your Honor. Well, what about Dr. Gurevich's deposition testimony where he was asked could he have used light dumbbells, began exercise regimen using, absent using these three pieces of exercise equipment, and the answer was yes. That he could have used that or perhaps other things, elastic band. Aren't there other things that could be used other than large equipment? Your Honor, this, it makes sense. A moving of walking or just moving one slip is exercise. In that context, the doctor was correct. He properly responded to the question. But these are the same doctors that said this special equipment that they approved and prescribed will help him to regain overall muscle tone. Perhaps I misread it, but I thought what they said was, yeah, he needs to exercise. He suggested this particular equipment. I didn't see anything wrong with it.  We're not sure that it will help. They didn't say he needed a third bedroom. He said he needed a third bedroom. He said he needed this particular equipment. They didn't particularly endorse this specific equipment. They endorsed the concept that, as you have articulated, his muscles are atrophying. He needs to exercise. But as one of my colleagues asked, what about dumbbells? What about other things that could also help achieve that same result? Your Honor, what is unique about this medically approved equipment is there are various equipment that is on the record, ERO 56, 56 to 57, and 54 to 55, that it will help. There are specialized equipment like dumbbells to raise up. This equipment would help him. Respiratory. And dumbbells and stretching things don't help respiratory. Yes, Your Honor. And that is why and because of his unique disabling condition, it's not every equipment that can help him. And over a period of time, he went to various equipment stores. And, in fact, this equipment that we approved by his doctors, equipment that he tested out, and we approved by a physical therapist before he provided all the information, the brochure to the doctors, that they independently reviewed and approved. Your Honor, as we stated, the presentation by HACLA and its counsel were false and misleading, and the lower court based its granting of HACLA's motion for summary judgment on this misleading information, and we asked that the lower court's decision should be reversed. And more importantly, Your Honor, the lower court erred when it stated that HACLA denying Mr. Magistro's request for reasonable accommodation under the Fair Housing Act was an administrative decision that can only be reviewed by the superior court. This, as we have stated in the brief, if allowed to stand, we foreclose and close the door permanently to claimants of fair housing rights to the federal court. And we urge this panel and this court to reverse that decision on that alone. Moreover, Mr. Magistro is a victim of housing discrimination. The two cases that the lower court also relied upon do not apply in this case, because Mr. Magistro diligently provided all the information that HACLA needed and requested. Instead of HACLA granting Mr. Magistro's reasonable accommodation request, HACLA falsely misrepresented its conversation with one of Mr. Magistro's medical providers and denied Mr. Magistro's request unreasonably. Yeah, we understand that's your position. We understand that. And more importantly, we want to reiterate that Mr. Magistro, in a claim for reasonable accommodation, is not required to show that HACLA's behavior was based or motivated by intentional discrimination. Do you want to save any of your time for rebuttal, counsel? Yes, Your Honor. Very well. So we'll hear from the counsel for HACLA. Good morning, counsel. Good morning, Your Honor. Your Honor. Your Honor. May it please the court, I am Robert Pearman for Sanders Roberts, representing the housing authority of the city of L.A. Discrimination based on disability, that's the test, which is never really addressed by appellant. Or you see we use the term, or the courts do, pretextual. Let me, I don't quite understand the position as to what discrimination is. Are you saying that they could have been wrong, but it's not discriminatory? Well, certainly an agency can make errors in judgment and that type of thing. But here, everything alleged was not due to disability, but a requirement that able-bodied as well as the disabled had to satisfy. But the duty is to do a reasonable, to afford a reasonable accommodation. Exactly. You either do or you don't. I don't think that's an intent test. I mean, it's not judged by an objective standard whether it was medically necessary, was it a reasonable accommodation. I mean, that's what we're struggling with here. Well, but again, if the rationale for our action was based on something other than discrimination based on disability, then the answer is yes. But if you refuse to accommodate to his disability, that is violative of the act. That is making your judgment on the basis of disability. You're treating him, he's asking for the accommodation and you're denying it. Isn't that discrimination on the basis of disability? Well, when you talk about government benefit, before you get to that, he has to qualify for the benefit, right? You don't even get to discrimination. Well, that's the issue here. Was it medically necessary? Well, here, well, there's a number of issues. The three bedroom, for example, forget about the certifications, Your Honor. You have to show that you've got some equipment to put in a bedroom. Pretty basic question, right? Look at the application that he submitted that Mr. Cannella first got. It's pretty sparse. It just says, I need an extra bedroom to house oversized medically necessary equipment. And Dr. Kaye's little brief certification just repeats the same words. Right. And this is big equipment. I mean, anybody who's been to a gym knows that a rowing machine and a bicycle are substantial equipment. But, Your Honor, we don't know that from the application. That's all it says. That's all it says at that point in time. Remember the context up here. Often, how would this come about? Perhaps someone moves into the jurisdiction who had equipment and they would say, Hackler, we now live here. We have X, Y, and Z. Give us this accommodation. Or they may be in the jurisdiction and they were cramped in a two-bedroom. Wouldn't the hackler have some duty to make some inquiry and engage in an interactive process? Exactly. What is this equipment? Why do you need it? Exactly. And we did. Mr. Cannella called up. He called Dr. Kaye, said, I'm taking notes. Tell me what equipment he has. He responds, he doesn't have any. That was the first response. Well, he doesn't have any place to put them. He doesn't have anything. He didn't list anything. Now, think about this. So the first thing Mr. Cannella does is there's no equipment listed. Nobody says he's got it. He's got no plan for it. You're going to issue the subsidy based on that? At some point, the authority knew what he wanted to put in, right? Well, he listed the equipment. All right. But the fundamental question, I messed up my Latin, sine qua non, is you have to show you've got equipment and have a plan to get it. Well, how could he have ñ what is he supposed to do if he doesn't have any place to put his equipment? What equipment? And that he wants ñ Does he have the equipment? Is he going to acquire the equipment? Isn't that a basic question you can ask? Sir, you don't have the equipment, you've got a plan to get it. Was the denial based on the fact that he didn't ñ you thought he didn't have the money to buy it, wasn't willing to buy the equipment, or you didn't think it was necessary? You have to have the equipment at some point. Just tell us what you plan to do in that regard. Wasn't the basis of the denial here ñ Both. One, the certification. The second, if you look at the first denial and the second one, he never said in response to this basic question, I've got the equipment or I have a plan to get the equipment. He refused to respond. He said, I don't have to answer that question. Now, we can't do that. That certainly is unreasonable to say, okay, second, third bedroom for medical necessary equipment and you don't have it. Is that why the district court ruled the way it did? That was one of the reasons that we put in there. Now, they make a big deal about the certifications to try to cloud the issues, but I'm just telling you there's a very simple path to your ruling. He never, never answered that basic fundamental question. It wasn't a subjective test on our ñ Can you show me where the district court dealt with that? I can't find that right now, but it was in our papers and, again, repeated. You argued that he didn't show that he had the equipment or that he was going to get it? Oh, yes. That's clearly stated. That's clearly stated, yes. And he never did. Now, does that make any sense at all, that we can issue this subsidized apartment without something on those lines? Again, it's not that we said we didn't believe his argument or that the loan program he had in mind didn't work. He just refused to even address the issue. Well, let me ask you this, counsel. He did get the doctors involved, and they wrote, and then you all followed up on it. If I recall the wording correctly, despite what the doctors had said, which basically endorsed the concept that he needed a third bedroom because of the equipment, when they were contacted, they each indicated that they encouraged him to exercise. They thought maybe this would be helpful to get him to exercise, but they had not specified any particular equipment, that anything on that line was entirely his own decision. Is that correct? That's correct. They never saw the equipment. They never recommended that specific. In answer to a question, Dr. Kaye said, do you believe it was necessary for a plaintiff to have oversized equipment in order to perform exercises? No. Well, of course, that's always, you know, that's true. He could perform exercises. Did he say that there was other, there were other things that were not oversized equipment that would have the same effect? Yes, I think that's the prior question that he responded to. And once again, this failure by plaintiff appellant to recognize that we could perhaps get correct answers and accommodate him differently were denied. For example, if we determined that he didn't satisfy the requirement for this extra bedroom, perhaps equipment that might be expensive that would fit in the one bedroom would help with his disability. He denies the opportunity to give this possible lesser benefit to him because he just took the position, don't ask any questions of me. Was that offered to him? Did someone from HACLA say, look, we may not be able to give you a third bedroom, but tell us what equipment you need, maybe we can help you buy it. That's the whole point. Never, because he takes the position. No, we never did because he never came with that concrete opportunity. The certifications are certainly weak. For example, part of them is based on hearsay that the doctor said, Mr. Mangistu told me that his physical therapist said this would work. Now, this is a certification signed by a doctor in 2015. But if you look at Mr. Mangistu's testimony, he says he last saw a physical therapist in 2012. So think about this. A 2015 certification, the hearsay statement of the plaintiff for a therapist who allegedly saw him last three years ago. Does that make any sense? Can we at least ask some more questions to get some better explanation of why this is necessary, Your Honor? That's all we're asking here. That's all we're saying. So are you saying essentially that Mr. Mangistu did not engage in any interactive process, even at the invitation of the housing authority? Well, I'd say on that point it was ambiguous, contradictory, incomplete. It wasn't a professional certification. I mean, it's not just something to be rubber stamped. You're saying these documents aren't good enough to show that this equipment would help him. Yes. I didn't author it. I didn't see it. If you look at the letters in February 2015 from both doctors, you can see the italicizing and bolding and all is the same. It's just kind of a form thing without a whole lot of thought to show that this is what you need. This is a three-bedroom unit, remember, he's looking to. In the public housing world, that's gold. Families are desperate for that, for those type of large units. Give us something that we can rely on on that basis. But, again. You don't dispute that he's in a wheelchair, that he has an aid. Absolutely not. Don't dispute that. And you don't dispute anything in these certifications. You just don't think they're sufficient, is that correct? Yes. That's correct. That's correct. You think part of it's wrong because the doctor later on indicated that he didn't suggest that they have a third bedroom and he didn't suggest any particular equipment, right? Correct. Correct. Correct. And, again, I say independently on the third bedroom, never saying you've got to plan to get it is fatal. How can that be pretextual, Your Honor? We did it for the reason we stated. But that's not really discussed in the district court's order at that point. Well, I think not because I think planners took the position that contrary to certification, they skipped over that because it's an indefensible position, Your Honor. There's nothing to combat that. He mentions in depositions and declarations someone may have biased it from a family, but he never articulated that to Hackler. That's on the record. Even his declaration never says, and I told them that. This is something in his head. We've got to have something. We have to have something, Your Honor. I can address anything else, the two bedrooms, but I think the answer is clear on the record and the judgment should be affirmed. Okay. Other questions by my colleague? All right. Thank you, counsel. So you have some rebuttal time, sir. Yes, Your Honor. May I quickly refer the court to ERO 54255? That is the February 6th letter of Dr. Kaczewski and Dr. Gurevich, February 5th letter. Specifically, Dr. Kaczewski, on the second to the last paragraph, ERO 55, if I may, I quote, He currently has in his possession the following medical prescribed equipment, electric wheelchair. However, he currently does not have the above-referenced medically prescribed in-home exercise equipment because he currently resides in a single apartment located at 521 South San Pedro Apartment, 505 Los Angeles, California. Your Honor, the equipment that were prescribed for him are listed in both letters, very specific. He could not purchase or he could not acquire those equipment. He testified that family, friends, and non-profit organization had assured him they would help him obtain those equipment. And there was no time Hakla engaged him in interactive process, never. Hakla misstated their conversation with Dr. Kaczewski. They never contacted Dr. Gurevich, Mr. Magistro's doctor of over 20 years. We started in 1993 when he had the chemical, he was exposed to chemicals. You're saying they contacted one of the doctors but not the other. Yeah, they contacted only one doctor, they did not contact the other doctor. The doctor that they contacted, Mr. Canellos, misrepresented the conversation he had with him. As we stated in the record, in his declaration in support of motion for summary judgment, he said Dr. Kaczewski told me Mr. Magistro authored the February 6, 2015 letter, which was directly contradicting to Dr. Kaczewski's own sworn testimony in his deposition. I think we're over time unless either of my colleagues have additional questions. Thank you, counsel, for your argument for both counsel. The case just argued is submitted.
judges: Schroeder, M. Smith, Chen